## WALTER A. NYE *et al. vs.* JAMES A. ROSE.

A municipality without legislative authority established a sinking fund, and appointed a commissioner to take charge of it. Subsequently a statute empowered the municipality to appoint a board of three commissioners of sinking funds, to hold and manage all sinking funds established and to be established, and directing any person having possession or control of any sinking fund to transfer it to the board of three commissioners.

*Held*, that *mandamus* lay to compel the commissioner first appointed to surrender the fund in his hands to the board of three commissioners.

PETITION for a writ of *mandamus*. On return to the alternative writ of *mandamus*.

*Providence, June* 10, 1892. STINESS, J. In June, 1890, the District of Narragansett, without legislative authority, voted to

establish a sinking fund for the payment of its bonded indebtedness, setting aside one thousand dollars for that purpose out of the tax for that year, and appointed the respondent commissioner of said sinking fund. He received said sum, which he invested, and for which he holds the security. In July, 1891, the General Assembly enacted, Pub. Laws, cap. 1035, of July 24, 1891, as follows: "The District Council of the District of Narragansett are hereby authorized to establish by ordinance a board of three commissioners of sinking funds, who shall take and have the control, possession, and management of all sinking funds that have been or may be established by the redemption of any bonds, notes, or other obligations heretofore issued or that may be hereafter issued by said district; and any person or persons now having possession or control of any such sinking fund shall surrender the same to such board of commissioners when established and appointed under this act."

The applicants so appointed have demanded the security held by the respondent under the former vote, which he refuses to surrender, upon the grounds, set out in his return, that he is not and never has been a commissioner of sinking funds, and has no sinking fund in his possession; but that he holds the security as the financial agent and trustee of the district, to which only he is accountable. His contention is, that there was no legally constituted sinking fund or commissioner under the vote of the district, and hence that he is not liable to *mandamus*, being neither a public officer nor an officer *de facto*, because there was no such office to which he could be elected or into which he could enter. It is not necessary to define the status of the respondent, whether an officer *de facto* or a financial agent. He is at least, with reference to this fund, something more than one acting in a private capacity. He is engaged in a public service, in the nature of an office, to which he was elected, and for the performance of which he has given bond. The matter here involved is one of public concern, in no way connected with the respondent's private rights or interests. The statute imposes upon him a specific public duty, by recognizing the validity of the first sinking fund, so called, and directing him to surrender it to the new board. The petition does not therefore seek an order against a mere private citizen in a

mere private matter. In *The Queen* v. *Abrahams*, 4 Q. B. 157, it was held that *mandamus* would lie against a private person in the case of a charity. But this petition seeks the enforcement of a statutory command with reference to a public fund. A primary office of *mandamus* is to compel the performance of a public duty. Shortt on Informations, *227; 2 Dillon Municip. Corp. 4th ed. § 824. For this reason an occasion can rarely ever arise when it must not be brought against one who has some connection with a public office out of which the duty arises. In *Kelly* v. *Wimberly*, 61 Miss. 548, it was held that one who is holding and executing an office *de facto* is estopped from setting up in his own defence that there is no such office *de jure*. In *State* v. *Layton*, 28 N. J. Law, 244, the fact that the respondent was holding under a void appointment did not prevent the issuing of *mandamus*. See, also, *American Railway Frog Company* v. *Haven*, 101 Mass. 398; *Burr* v. *Norton*, 25 Conn. 103; and *People ex relat. Cummings* v. *Head*, 25 Ill. 325.

The cases cited by the respondent, *State of Georgia* v. *Powers*, 14 Ga. 388; *State* v. *Trent*, 58 Mo. 571, and *The Queen* v. *Hopkins*, 1 Q. B. 161, to the effect that *mandamus* does not lie against a private citizen, do not, in our opinion, apply to this petition. Here we have the distinction pointed out in *State* v. *Trent* of one holding a *quasi* official station. The parties have each a certain duty to perform under the statute, and the applicants have a clear right, for which they have no other specific legal remedy. It is the peculiar province of *mandamus* to assist in such cases. The respondent's point that the statute impairs the obligation of a contract is not well taken. The statute recognizes as valid the act of the election of the District of Narragansett in creating the sinking fund, and so treats the respondent as a public officer. As such he does not stand upon the relation of a contract, but in obeying the statute he fulfils his legal duty under his appointment as a commissioner. We think a peremptory *mandamus* should issue.

*William G. Roelker*, for petitioners.

*David S. Baker & William C. Baker*, for respondent.