[File No. 6285.]

B. J. KNUDSON et al., for Themselves and for the Benefit of All Other Persons Similarly Situated, to wit, All Residents, Citizens and Taxpayers of Norman School District, No. —, Traill County, North Dakota, Respondents, v. NORMAN SCHOOL DISTRICT NO. —, TRAILL COUNTY, NORTH DAKOTA, a Public Corporation, et al., Appellants.

(256 N. W. 224.)

780

Opinion filed August 11, 1934.   Rehearing denied August 24, 1934.

*I. A. Acker,* for appellants.
*Burdick & Burdick,* for respondents.

BURR, Ch. J. The defendants appeal from a judgment permanently restraining the Norman School District from establishing and maintaining a high school, and declaring certain proceedings of the school district null and void.

Ever since 1906 Norman School District has maintained and operated a high school in Clifford within the district. On December 27, 1933, an election was held on the propositions set forth in what was called the "official school ballot of Norman School District, Traill County, North Dakota, for a Special Election to be held December 27, 1933, as follows:

### "Limit of Indebtedness

"Shall the Board of Directors of Norman School District of Traill County, North Dakota, be authorized to increase the five per cent (5%) limit of indebtedness allowed by law from five per cent (5%) of assessed valuation to ten per cent (10%) of assessed valuation?

"Yes ☐
"No ☐ .

"Shall the Board of Directors of Norman School District, Traill County, North Dakota, be authorized to issue Serial Bonds of Norman School District in the aggregate sum of $32,000.00, the first installment of such bonds to mature three (3) years from the date of such bonds and the balance payable in equal annual installments, the last installment to mature twenty (20) years from the date of such bonds, for the purpose of securing from the Federal Government approximately $41,600.00, with which to build and equip in Clifford, North Dakota, a grade and high school building?

"Yes ☐
"No ☐ "

On the first proposition there were 112 votes "yes" and 49 votes "no." On the second proposition there were 118 votes "yes" and 43 votes "no." Thus each proposition had the majority required by chapter 196 of Session Laws of 1927 as amended by chapter 170 of Session Laws of 1933.

It is conceded the defendants intend to issue the bonds, secure the federal aid mentioned, build a high school and grade school building

upon the site of the present school building and to use as much of the present building as may be convenient.

Some question is raised as to the initiation of the proceedings looking toward the issuance of bonds. Section 7 of chapter 196 of the Session Laws of 1927, amended by chapter 195 of the Session Laws of 1931 provides that proceedings for the issuance of bonds shall be instituted by the adoption of an "initial resolution" therefor by the governing body, in this case the school board, when the purpose is to erect school buildings; that this "initial resolution may be adopted by a majority vote of the governing body at any regular meeting thereof or at any special meeting of which notice has been given as required by law, *without any* previous action thereon or *request therefor by the voters or property owners.*" Section 7, subd. (b), chap. 196, Session Laws 1927. The record shows this was done. Hence we do not need to inquire into the legality of the petition for such purpose filed by the voters of the district.

Plaintiffs have four main objections. They say there was no election for choice of site; that there was no election to determine whether the Norman School District should establish a high school; that each proposition should have been submitted on a separate ballot or sheet of paper; and that the second question submitted contains two separate and distinct propositions—the issuance of bonds and the building of a school.

There is no merit in the first contention. It is true § 1184 of the compiled laws requires the school board, whenever it is desirable or necessary to the welfare of the schools, or to provide school privileges for the children, or whenever petitioned by one third of the voters of the district, to call an election "to vote upon the question of the selection, purchase, exchange or sale of a school house site, of the erection, removal or sale of a school house." The issue here does not involve site for a school house or a change of site. The record shows the proposed school is to be built upon the site already owned by the school district. Some years ago additional land was purchased and now it is claimed there are two sites; but it is clear this was but an addition. There is but one site, the one now occupied, and the proposed school will be built thereon adjacent to the present building or in its place. Therefore it was not necessary to vote upon the selection of a site.

There is no merit in the second contention. This is not a proposition to establish a high school. The record shows there has been an established high school maintained in the district for twenty-eight years— a high school recognized by the state department of education.

Plaintiffs contend that because the two propositions were printed or typewritten on the same sheet of paper it violates section 10 of chapter 196 of the Session Laws of 1927. This chapter is entitled "Bond Issues of Municipal Corporations" and applies to common school districts. Subd. 1, § 1.

Section 10 provides that at the regular municipal elections the proposition of issuing bonds may be submitted and in that case "the ballot for such election shall be separate from other ballots used on the same day for other elections, and shall be written or printed, and shall state the question in substantially the following form:

"Shall the  .  .  .  (here inserting the name of the municipality) issue its bonds in the amount of not to exceed \$——— (here inserting the amount) for the purpose of  .  .  .  (here inserting the purpose)?

"———    Yes
"———    No.

"Spoiled or blank ballots cast at such election shall not be counted either for or against the proposed issue."

This means that ballots on bond propositions shall be separate and distinct from the ballots used for the election of officers, etc. It does not prevent the question of the increase of the debt limit and the question of issuing of bonds from being printed on the same sheet of paper. The ballot used in this case did not violate section 10.

Some question is raised as to the form of the question submitted as the first proposition—the increase of the debt limit.

Section 1326a3 of the Supplement says: "Printed or typewritten ballots shall be used in submitting this question at any election, and the question to be voted upon shall be set forth on such ballot in clear and concise language. On such ballots there shall be printed or typewritten, below the question to be voted upon, the following words and characters:

" 'For Increasing the Limit of Indebtedness          ☐
" 'Against Increasing the Limit of Indebtedness       ☐' " '

The language of the ballot used is not verbatim; but the question is stated in clear and concise language. No one could be misled as to its purpose and the "yes" and "no" thereon could not confuse any one. While a literal copying of the words would have prevented the criticism, yet the will of the people should not be thwarted. The people overwhelmingly voted to increase the debt limit. They knew what the words "yes" and "no" meant. No penalty is attached for failure to follow the statute literally. The lapse is not made fatal. This is the real test of the effect of a departure. Perry v. Hackney, 11 N. D. 148, 152, 90 N. W. 483. See also Olson v. Lemmon, 33 S. D. 380, 146 N. W. 592; Carr v. Wakonda Independent Consol. School Dist. 44 S. D. 103, 182 N. W. 626. There was such substantial compliance with the requirement as renders the submission of the question valid.

It is said the second proposition submitted to the voters involved two questions—shall the school district issue bonds? Shall the school district build and equip a grade and high school building?

It is a settled law in this state that statutes providing for the issuance of municipal bonds are to be strictly construed in actions to prevent their issuance; that the bond elections shall state specifically the purpose for which the bonds are to be issued, and when two or more purposes are involved, each purpose must be submitted singly. Stern v. Fargo, 18 N. D. 289, 122 N. W. 403, 26 L.R.A.(N.S.) 665.

An examination of the propositions involved discloses clearly that there are not two purposes stated therein. Certainly there would have been plenty of ground for confusion if the expression "with which to build in Clifford a grade and high school building," had not been used, for then the voter would not have been enabled to tell the purpose for which the bonds were to be issued. The proposition submitted to the voters was that of issuing bonds for the erection of a school building. It was not a question of establishing a high school. That was not involved. In Logan v. Bismarck, 49 N. D. 1178, 194 N. W. 908, we held that the submission of the proposition to issue bonds for "constructing or purchasing" waterworks was a single question and did not come within the condemnation of the rule announced in the Stern Case. The question involved the advisability of public waterworks as opposed to private waterworks, and the issue was that of giving to the municipal authorities power to issue bonds for the purpose of establishing a

municipal plant by construction or purchase, as they saw fit. In Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819, we held that a proposition submitted to the people authorizing the municipal authorities to "purchase or erect" a lighting plant was not a double proposition. The question was whether the municipal authorities would be authorized to establish a municipal plant. In the case at bar the question submitted to the voters for determination was whether the district should issue bonds to erect a school house—not even "construct or purchase" or "erect or purchase;" but build and equip. We hold that the proposition submitted but one question. The decision is reversed and the injunction denied.

BURKE, MOELLRING, NUESSLE and CHRISTIANSON, JJ., concur.